UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND
*ELECTRONICALLY FILED*

| | | |
|---|---|---|
| **ANGELA SCHMIDT STAMPER** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| v. | ) | **CASE NO.:** _____ |
| | ) | |
| **CARTER COUNTY, KENTUCKY** | ) | |
| | ) | |
| SERVE: | ) | |
| Michael Malone | ) | |
| Carter County Judge Executive | ) | |
| 300 West Main Street | ) | |
| Grayson, Kentucky 41143 | ) | |
| | ) | |
| **JEFF MAY** | ) | |
| | ) | |
| SERVE: | ) | |
| Jeff May | ) | |
| 300 West Main Street | ) | |
| Grayson, Kentucky 41143 | ) | |
| | ) | |
| **JOSHUA KITCHEN** | ) | |
| | ) | |
| SERVE: | ) | |
| Joshua Kitchen | ) | |
| 2244 Smith Street | ) | |
| Ashland, Kentucky 41101 | ) | |
| | ) | |
| **DEFENDANTS** | ) | |

\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT**

**Introduction**

1.    Carter County Deputy Sheriff Joshua Kitchen used his law enforcement authority to harass Angela Schmidt Stamper and ultimately subject her to nonconsensual anal

intercourse. When Carter County Sheriff Jeff May was made aware of Kitchen's conduct, he failed to appropriately investigate or discipline Kitchen, and initially refused to even ask another agency to investigate. Schmidt seeks damages caused by Defendants' conduct pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, and Kentucky statutory and common law.

**Parties and Jurisdiction**

2.    Schmidt is, and at all times relevant to this Complaint, has been, a resident of Olive Hill, Carter County, Kentucky.

3.    At all times relevant to this Complaint, Defendant Carter County, Kentucky was responsible for the establishment of policies and procedures, either formally or by custom, regarding the employment, training, supervision, discipline, and conduct of all Carter County Sheriff's Office deputies, employees, and independent contractors, and was responsible for the employment, training, supervision, discipline, and conduct of all Sheriff's Office deputies, employees, and independent contractors.

4.    At all times relevant to this Complaint, May was the Carter County Sheriff. He was responsible for the establishment of policies and procedures, either formally or by custom, regarding the employment, training, supervision, discipline, and conduct of all Sheriff's Office deputies, employees, and independent contractors, and was responsible for the employment, training, supervision, discipline, and conduct of all Sheriff's Office deputies, employees, and independent contractors. He personally and directly participated in Schmidt's mistreatment. He is sued in his individual capacity and in his official capacity as Carter County Sheriff.

5.     At all times relevant to this Complaint, Kitchen was a Carter County Deputy Sheriff, acting under the color of law and within the scope of his employment on behalf of Carter County and/or May. He personally and directly participated in Schmidt's mistreatment. He is sued in his individual capacity.

6.     This Court has subject matter jurisdiction over this action and venue is proper. Schmidt's claims involve an amount more than the jurisdictional limit of this Court and a substantial amount of the conduct giving rise to this matter occurred in this judicial District.

**Facts**

7.     In October 2020, Kitchen met Schmidt during a criminal investigation of an incident involving a family member of Schmidt's.

8.     During that investigation, Kitchen learned sensitive information that, if made public, could have endangered the safety of individuals with whom Schmidt had close relationships.

9.     Kitchen used his authority as a Deputy Sheriff to obtain Schmidt's telephone number and home address.

10.     Kitchen further began sending Schmidt sexually explicit communications via telephone and Schmidt's social media accounts, and demanded that she engage in sexually explicit communications with him. He continued sending Schmidt harassing communications for the next several months.

11.     Throughout Kitchen's communications with Schmidt, he reminded her that he knew and could disclose the sensitive information referenced above.

12.    Throughout Kitchen's communications with Schmidt, Schmidt was in constant fear for her safety and the safety of her children, and the individuals who were the subject of that sensitive information.

13.    On February 6, 2021, Kitchen entered Schmidt's house in uniform, on-duty, and wearing his duty belt, including his service firearm. He demanded that she position her body in specific ways and allow him to take pictures of her.

14.    On February 27, 2021 Kitchen told Schmidt he was on his way to her house and demanded that she be alone when he arrived. Kitchen drove there in his Sheriff's Office vehicle, and entered her house in uniform, while again wearing his service weapon. He ordered Schmidt to turn around, cinched her hair in his fist and began to twist until Schmidt could no longer freely move her head or neck. Kitchen then forcibly removed Schmidt's pants, pulled her underwear to the side, and anally penetrated Schmidt against her will. During this assault, Schmidt repeatedly felt his service weapon hit the back of her thigh.

15.    Schmidt did not consent to sexual intercourse with Kitchen.

16.    Kitchen subjected Schmidt to sexual intercourse through intimidation, coercion, duress, and implied threat of physical harm to her and others.

17.    Afterward, Kitchen threatened to disclose the sensitive information discussed above if Schmidt reported Kitchen's conduct.

18.    In March 2021, Schmidt's boyfriend reported to May that Kitchen sexually assaulted Schmidt under the threat of, among other things, disclosing sensitive information.

19.    May told Schmidt's boyfriend that he was already aware of the allegations and

that he would investigate.

20. Later, May told Schmidt's boyfriend that he had written Kitchen up, assigned Kitchen a different patrol area, and contacted the Office of the Attorney General to investigate Schmidt's allegations.

21. The Attorney General's Office told Schmidt's boyfriend that it had no record of any contact or request for investigation from May regarding Kitchen's conduct.

22. May referred Kitchen's conduct to an outside agency, the Kentucky State Police, only after Schmidt's co-counsel, Mr. Hamilton, contacted May by letter regarding Schmidt's allegations.

23. Upon information and belief, Carter County and/or May knew that Kitchen had previously engaged in conduct similar to Schmidt's allegations and/or conduct that posed an unreasonable risk to citizens in similar situations but nonetheless hired and retained Kitchen and did not provide necessary or adequate training or supervision to protect Schmidt and others.

24. Schmidt believes that, after reasonable discovery, she will prove that Carter County and May failed to respond appropriately to earlier allegations of deputy misconduct.

25. Carter County failed to appropriately train and supervise May, Kitchen, and all other Sheriff's Office employees, or others who interacted professionally with Sheriff's Office employees, regarding preventing, detecting, and responding to deputy misconduct.

26. May failed to appropriately train and supervise Kitchen and all other Sheriff's Office employees, or others who interacted professionally with Sheriff's Office employees,

regarding preventing, detecting, and responding to deputy misconduct.

27.    Kitchen's misconduct reflected and was a consequence of Carter County and/or May's training and supervision.

28.    Through their actions and inactions, Carter County and/or May encouraged deputy misconduct, and acquiesced in, endorsed, and ratified deputy misconduct, including Kitchen's.

29.    Defendants' conduct severely injured Schmidt, for which she is entitled to recover actual damages in an amount to be determined at trial.

**Count 1:**
**Due Process**
**42 U.S.C. § 1983**
**(Defendant Kitchen)**

30.    Kitchen's conduct violated Schmidt's privacy and liberty rights and substantive due process rights to bodily integrity under the United States Constitution.

31.    Kitchen's conduct severely injured Schmidt.

32.    In addition to compensatory damages, interest, expenses, and court costs, Schmidt is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

**Count 2:**
**Use of Force**
**42 U.S.C. § 1983**
**(Defendant Kitchen)**

33.    Kitchen intentionally used force against Schmidt.

34.    The force Kitchen used against Schmidt was objectively unreasonable from the

perspective of a reasonable officer.

35. Kitchen's use of force was not rationally related to a legitimate governmental objective.

36. Kitchen's use of force severely injured Schmidt.

37. In addition to compensatory damages, expenses, and court costs, Schmidt is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

**Count 3:**
**Assault/Battery**
**(Defendant Kitchen)**

38. Kitchen placed Schmidt in reasonable apprehension of harmful or offensive contact.

39. Kitchen made harmful and/or offensive contact with Schmidt.

40. Kitchen's conduct severely injured Schmidt.

41. In addition to compensatory damages, interest, expenses, and court costs, Schmidt is entitled to punitive damages.

**Count 4:**
**False Imprisonment**
**(Defendant Kitchen)**

42. Kitchen deprived Schmidt of liberty without Schmidt's consent and against her will.

43. Kitchen's conduct severely injured Schmidt.

44. In addition to compensatory damages, interest, expenses, and court costs,

Schmidt is entitled to punitive damages.

## Count 5:
### Deliberate Indifference
### 42 U.S.C. § 1983
### (Defendant May)

45. Kitchen's sexual abuse subjected Schmidt to a strong likelihood of serious harm.

46. May was aware of this strong likelihood that Schmidt, or similarly situated individuals, would be harmed or strongly suspected facts showing a strong likelihood that Schmidt, or similarly situated individuals, would be seriously harmed but refused to confirm whether these facts were true.

47. May's awareness or strong suspicion can be inferred from the fact that the risk was obvious.

48. May consciously failed to take reasonable measures to prevent harm from occurring.

49. Schmidt would not have been harmed or would have suffered less harm if May had taken reasonable measures.

50. May's conduct severely injured Schmidt.

51. In addition to compensatory damages, interest, expenses, and court costs, Schmidt is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

## Count 6:
### *Monell* Liability
### 42 U.S.C. § 1983
### (Defendants Carter County and May)

52. Carter County and/or May failed to adequately train, supervise, or discipline

their employees.

53.    Carter County's and/or May's respective failures to adequately train, supervise, or discipline their employees amounted to deliberate indifference to the fact that inaction would obviously result in the violation of the right to bodily integrity and/or to be free from unreasonable force.

54.    Carter County's and/or May's respective failures to adequately train, supervise, or discipline their employees proximately caused the violation of Schmidt's right to bodily integrity and/or to be free from unreasonable force.

55.    In addition to compensatory damages, interest, expenses, and court costs, Schmidt is entitled to punitive damages and an award of attorney fees in prosecuting this action, pursuant to 42 U.S.C. § 1988.

**Count 7:**
**Negligence/Gross Negligence**
**(Defendants Kitchen and May)**

56.    It was May's duty to exercise ordinary care for the safety of other persons, including Schmidt, to avoid foreseeable injuries, including in the hiring, retention, training, and supervision of deputies.

57.    May knew or should have known that Schmidt was, or individuals similarly situated were, at risk of injury.

58.    May's breach of his duty was a substantial factor in causing Schmidt's injuries.

59.    May's wanton, reckless, malicious, or oppressive conduct manifested an extreme indifference to the lives and safety of others, including Schmidt.

60.    Kitchen's wanton, reckless, malicious, or oppressive conduct manifested an

extreme indifference to the lives and safety of others, including Schmidt.

61.   In addition to compensatory damages, interest, expenses, and court costs, Schmidt is entitled to punitive damages and an award of attorney fees in prosecuting this action.

### Count 8:
### KRS 446.070
### (Defendant Kitchen)

62.   Kitchen's conduct constitutes violations of KRS 510.040 (Rape in the first degree), KRS 510.070 (Sodomy in the first degree), KRS 510.110 (Sexual abuse in the first degree), KRS 510.140 (Sexual misconduct), and KRS 522.020 (Official misconduct in the first degree).

63.   Kitchen's statutory violations severely injured Schmidt.

64.   In addition to compensatory damages, interest, expenses, and court costs, Schmidt is entitled to punitive damages and an award of attorney fees in prosecuting this action.

### Count 9:
### Vicarious Liability
### (Defendants Carter County and May)

65.   Kitchen's actions were the proximate cause of Schmidt's injuries.

66.   Carter County and/or May are vicariously liable for Kitchen's violations of Kentucky law.

67.   Under KRS 70.040, the office of sheriff is responsible for deputy sheriffs' acts or omissions.

68.   In addition to compensatory damages, interest, expenses, and court costs,

Schmidt is entitled to punitive damages and an award of attorney fees in prosecuting this action.

**Request for Relief**

Accordingly, Schmidt requests that the Court grant trial by jury and order the following relief:

1.      Judgment in her favor against Defendants and an award of actual and punitive damages for Defendants' unlawful actions;

2.      An award of attorney fees, costs, and expenses incurred in prosecuting this action, pursuant to 42 U.S.C. § 1988; and

3.      All other relief to which Schmidt may be entitled.

Respectfully submitted,


/s/ Aaron Bentley
Aaron Bentley
abentley3B@gmail.com
Belzley, Bathurst & Bentley
P.O. Box 278
Prospect, Kentucky 40059
(502) 690-6054

Brandon T. Hamilton, Esq.
Hamilton Law Group PLLC
178 Scott Street
PO Box 1387
Olive Hill, KY 41164
Email: Brandon@bth-law.com
Tel: (606) 764-0125
Fax: (606) 462-3625
*Co-counsel for Plaintiff*